## No. 22-5574

In the

# United States Court of Appeals

## For the Sixth Circuit

—————————————

ERICKA PEACOCK JOHNSON,

*Plaintiff-Appellant*,

v.

EVOLENT HEALTH LLC,

*Defendant-Appellee*.

—————————————

On Appeal from the United States District Court for the
Western District of Kentucky at Louisville
Case No. 3:20-cv-601
Honorable David J. Hale, District Judge
Honorable Colin H. Lindsay, Magistrate Judge

—————————————

**BRIEF OF DEFENDANT-APPELLEE
EVOLENT HEALTH LLC**

—————————————

Michael R. Phillips            Jonathan Y. Ellis
Melissa M. Weiss              McGuireWoods LLP
McGuireWoods LLP          501 Fayetteville Street
77 West Wacker Drive         Suite 500
Suite 4100                   Raleigh, NC 27601
Chicago, IL 60601            T: (919) 755-6688
T: (312) 750-8902

October 11, 2022

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 22-5574               Case Name: Ericka Johnson v. Evolent Health LLC

Name of counsel: Jonathan Y. Ellis

Pursuant to 6th Cir. R. 26.1, Evolent Health LLC
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> Evolent Health LLC is wholly-owned by Evolent Health, Inc., a publicly-traded corporation under the symbol "EVH" on the New York Stock Exchange.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

## CERTIFICATE OF SERVICE

I certify that on _____ October 11, 2022 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Jonathan Y. Ellis

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

i

# TABLE OF CONTENTS

**Page**

ORAL ARGUMENT STATEMENT ............................................................. 1

INTRODUCTION ...................................................................................... 1

STATEMENT OF JURISDICTION............................................................ 3

STATEMENT OF THE ISSUES................................................................ 3

STATEMENT OF THE CASE ................................................................... 4

A.    Factual Background ..................................................................... 4

     1.    Johnson has a rocky start to employment at Evolent. .......... 4

     2.    Johnson agrees to a transfer to a new team. ......................... 6

     3.    Evolent plans a reduction in its workforce. .......................... 8

     4.    Johnson informs Lindauer and Waiters of her
        pregnancy. ............................................................................. 10

     5.    Evolent terminates Johnson as part of the reduction in
        force....................................................................................... 13

B.    Procedural History ..................................................................... 14

SUMMARY OF ARGUMENT ................................................................. 20

STANDARD OF REVIEW....................................................................... 22

ARGUMENT ........................................................................................... 23

I.    The District Court Correctly Granted Evolent Summary
    Judgment on Johnson's Pregnancy-Discrimination Claim. ......... 24

    A.    Johnson Cannot Establish a *Prima Facie* Case of
        Pregnancy Discrimination Because There Was no
        Nexus Between her Pregnancy and Termination. ............. 25

    B.    Even if Johnson Could Establish a *Prima Facie* Case,
        She Cannot Establish that Evolent's Legitimate
        Reasons for Her Termination Are Pretext........................... 30

    C.    Johnson Cannot Save Her Claim with the Proffered
        Pattern-and-Practice Evidence............................................ 35

II.    The District Court Properly Dismissed Johnson's FMLA
     Interference and Retaliation Claims............................................ 41

III.   The Court Properly Denied Johnson's Motion To Strike or
       Redact. .......................................................................... 43

CONCLUSION ........................................................................ 47

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ammerman v. Bd. of Educ.*,
  30 S.W.3d 793 (Ky. 2000)...............................................................20, 24

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................22

*Bacon v. Honda of America Mfg., Inc.*,
  370 F.3d 565 (6th Cir. 2004).......................................................35, 36

*Bailey v. Oakwood Healthcare, Inc.*,
  732 F. App'x 360 (6th Cir. 2018) .......................................................35

*Baker Hughes Inc. v. S&S Chemical, LLC*,
  836 F.3d 554 (6th Cir. 2016)...............................................22, 23, 45

*Barnes v. GenCorp, Inc.*,
  896 F.2d 1457 (6th Cir. 1990).............................................................37

*Bell v. Ohio State Univ.*,
  351 F.3d 240 (6th Cir. 2003).............................................................28

*City of Columbus, Ohio v. Hotels.com, L.P.*,
  693 F.3d 642 (6th Cir. 2012).............................................................27

*Clemente v. Vaslo*,
  679 F.3d 482 (6th Cir. 2012).............................................................28

*Cline v. Catholic Diocese of Toledo*,
  206 F.3d 651 (6th Cir. 2000).............................................................25

*Cone v. Longmont United Hosp. Ass'n*,
  14 F.3d 526 (10th Cir. 1994).............................................................40

*Conner v. State Farm Mut. Auto. Ins. Co.*,
  273 F. App'x 438 (6th Cir. 2008) .......................................................40

*Cooper v. City of North Olmstead*,
   795 F.2d 1265 (6th Cir. 1986) ............................................................. 38

*Diebel v. L & H Resources, LLC*,
   492 F. App'x 523 (6th Cir. 2012) .................................................... 37, 40

*Donald v. Sybra, Inc.*,
   667 F.3d 757 (6th Cir. 2012) .................................................. 35, 41, 42

*Douglas v. Eaton Corp.*,
   577 F. App'x 520 (6th Cir. 2014) .......................................................... 32

*Frazier v. USF Holland, Inc.*,
   250 F. App'x 142 (6th Cir. 2007) .......................................................... 28

*Hamilton Cnty. Emergency Commc'ns Dist. v. Level 3
   Commc'ns, LLC*,
   845 F. App'x 376 (6th Cir. 2021) .......................................................... 44

*Hicks v. Concorde Career College*,
   449 F. App'x 484 (6th Cir. 2011) .......................................................... 44

*Howe v. City of Akron*,
   801 F.3d 718 (6th Cir. 2015) ................................................................. 46

*International Brotherhood of Teamsters v. United States*,
   431 U.S. 324 (1977) ...................................................................... 35, 39

*Killian v. Yorozu Auto. Tenn., Inc.*,
   454 F.3d 549 (6th Cir. 2006) ................................................................. 41

*Marshall v. Rawlings Co.*,
   854 F.3d 368 (6th Cir. 2017) .......................................................... 17, 29

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ...................................................................... 20, 24

*Megivern v. Glacier Hills Inc.*,
   519 F. App'x 385 (6th Cir. 2013) .................................................... 35, 40

*O'Donnell v. City of Cleveland*,
   838 F.3d 718 (6th Cir. 2016) ................................................................. 31

*Prebilich-Holland v. Gaylord Entertainment Co.*,
    297 F.3d 438 (6th Cir. 2002)............................................ 16, 25, 26, 27

*Reed v. City of Memphis*,
    735 F. App'x 192 (6th Cir. 2018) ...................................... 44

*Reitz v. Ford Motor Co.*,
    2019 WL 4675387 (W.D. Ky. Sept. 25, 2019).................................... 42

*Scott v. Eastman Chemical Co.*,
    275 F. App'x 466 (6th Cir. 2008) ...................................... 42

*Scottsdale Ins. Co. v. Flowers*,
    513 F.3d 546 (6th Cir. 2008)................................................ 28

*Serrano v. Cintas Corp.*,
    699 F.3d 884 (6th Cir. 2012)................................................ 36

*Slusher v. United States Postal Service*,
    731 F. App'x 478 (6th Cir. 2018) ...................................... 42

*Spees v. James Marine, Inc.*,
    617 F.3d 380 (6th Cir. 2010)................................................ 20

*Staub v. Proctor Hosp.*,
    562 U.S. 411 (2011)................................................ 30

*Superior Production P'ship v. Gordon Auto Body Parts Co.*,
    784 F.3d 311 (6th Cir. 2015)................................................ 22

*Voltz v. Erie Cnty.*,
    617 F. App'x 417 (6th Cir. 2015) ...................................... 30

*Williams v. Dearborn Motors 1, LLC*,
    No. 20-1351, 2021 WL 3854805 (6th Cir. Aug. 30, 2021)............. 35, 36

## Statutes

28 U.S.C. § 1291................................................................ 3

28 U.S.C. § 1331................................................................ 3, 15

vi

28 U.S.C. § 1367 ................................................................ 3

29 U.S.C. § 2611 ............................................................ 3, 15

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ........ 24

Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq.* ...................... 3

Ky. Rev. Stat. § 344.030(8)(a) ......................................... 15, 24

Ky. Rev. Stat. § 344.040(1)(a) ......................................... 15, 24

## Other Authorities

Fed. R. Civ. P. 26 ............................................................ 45

Fed. R. Civ. P. 56 ........................................................ 3, 22

## ORAL ARGUMENT STATEMENT

Evolent does not believe that oral argument is necessary or would meaningfully aid the Court in resolution of the issues presented in this appeal. No significant question of law is in dispute and the facts are straightforward. If the Court prefers to hear oral argument, however, Evolent would like to participate.

## INTRODUCTION

This case is straightforward. Johnson was a low performing employee who Evolent terminated as part of a reduction in force ("RIF") affecting several dozen employees in different departments. Although Johnson told her supervisor and a benefits manager shortly before her termination in February 2020 that she was pregnant and intended to take leave under the Family and Medical Leave Act ("FMLA"), no one else at Evolent, let alone anyone involved in the RIF, knew of Johnson's pregnancy or intention to take FMLA leave. Evolent made the decision to include Johnson in the workforce reduction based on her performance ratings and prior to her disclosing her pregnancy or her intention to take FMLA leave. The record is devoid of any evidence that Evolent's decision

1

to include Johnson in that process was pretext for pregnancy discrimination or FMLA retaliation or interference.

The district court thus properly rejected Johnson's claims, holding that Johnson had not established a *prima facie* case of pregnancy discrimination and could not establish that Evolent's legitimate, non-discriminatory reason for her termination was pretextual. The court also rightly held that even if Johnson could establish a *prima facie* case of FMLA retaliation or interference, she could not establish that Evolent's reason for terminating her employment was pretext. Summary judgment for Evolent was proper and should be affirmed.

The district court also correctly denied as moot Johnson's motion to strike two declarations (or portions thereof) that Evolent submitted in support of its motion for summary judgment. The court did not rely on these declarations in granting summary judgment and thus did not abuse its discretion in declining to strike portions of these declarations. Johnson presents no grounds for error and the district court's decision should be affirmed.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Johnson's FMLA claims under the federal question statute, 28 U.S.C. § 1331, and supplemental jurisdiction over Johnson's state-law claim under 28 U.S.C. § 1367. This Court has appellate jurisdiction under 28 U.S.C. § 1291 to review the district court's final judgment granting summary judgment to Evolent under Federal Rule of Civil Procedure 56.

## STATEMENT OF THE ISSUES

1.   Whether the district court properly granted summary judgment to Evolent on Johnson's pregnancy discrimination claim under the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq.*, where Johnson failed to make a *prima facie* showing of discrimination and failed to establish that Evolent's legitimate, non-discriminatory reasons for terminating her were pretextual.

2.   Whether the district court properly granted summary judgment to Evolent on Johnson's FMLA interference and retaliation claims under 29 U.S.C. § 2611, where Johnson failed to make a *prima facie* showing of interference or retaliation and failed to establish that

Evolent's legitimate, non-discriminatory reasons for terminating Johnson were pretextual.

3.    Whether the district court properly denied as moot Johnson's motion to strike portions of declarations on which the court did not rely in granting summary judgment.

## STATEMENT OF THE CASE

### A.    Factual Background

Appellee Evolent Health LLC provides administrative services for healthcare plans, helping those plans "lead, build, and own the transition from fee-based to value-based health care." (Ventimiglia Decl., R. 35-8, Page ID # 366.)  Appellant Ericka Peacock Johnson worked for Evolent from June 2018 to her termination on February 24, 2020.  During her two years at the company, Johnson's performance was consistently poor until she was terminated as part of a company-wide reduction-in-force initiative focused on such low-performing employees.

### 1.    *Johnson has a rocky start to employment at Evolent.*

Evolent hired Johnson in June 2018 as a Reimbursement Analyst. (Johnson Dep., R. 35-2, Page ID # 184-185.)  Johnson worked remotely from Kentucky and reported to Senior Manager Clarice Maxwell.

4

(Johnson Dep., R. 35-2, Page ID # 188.)  Her responsibilities included reviewing reimbursement issues submitted by Evolent's clients through Evolent's ticketing system.  (Johnson Dep., R. 35-2, Page ID # 189-190; Maxwell Dep., R. 40-4, Page ID # 577.)

From the start, Johnson struggled with her performance.  Evolent employees receive an annual performance review at the end of each calendar year, including an overall rating on their performance on a five-point scale.  (2018 Evaluation, R. 35-2, Page ID # 224; 2019 Evaluation, R. 35-2, Page ID # 226-228; Johnson Dep., R. 35-2, Page ID # 193.)  In Johnson's first review, at the end of 2018, Johnson's direct supervisor, Maxwell, assigned Johnson's performance a rating of only two out of five. (Johnson Dep., R. 35-2, Page ID # 224.)

To address Johnson's poor performance, Maxwell communicated to Johnson her expectations about Johnson's responsibilities, including navigating and effectively using the ticketing system.  (Johnson Dep., R. 35-2, Page ID # 203-204; Maxwell Dep., R. 35-3, Page ID # 246-248.) Maxwell also scheduled series of one-on-one training sessions with Johnson.  (Johnson Dep., R. 35-2, Page ID # 203-204; Maxwell Dep., R. 35-3, Page ID # 246-248.)

Unfortunately, over the following year, Johnson's performance did not improve. At the end of 2019, Maxwell again gave Johnson a rating of two out of five on her year-end performance review. (Johnson Dep., R. 35-2, Page ID # 226-228.) Maxwell noted that Johnson "still need[ed] to become more efficient and proficient in the ticket process" and "pay more attention to detail when requesting and analyzing reports." (Johnson Dep., R. 35-2, Page ID # 227.) Maxwell observed that she "continuously ha[d] to … ask[] questions" when Johnson submitted a completed ticket. (Johnson Dep., R. 35-2, Page ID # 227.)

Based on Johnson's continuing performance issues, Maxwell testified that, near the end of 2019, Maxwell intended to place Johnson on a formal performance-improvement plan. (Maxwell Dep., R. 40-4, Page ID # 592-593.)

### 2. *Johnson agrees to a transfer to a new team.*

Towards the end of 2019, as part of a company-wide reorganization, Evolent disbanded the Reimbursement Team and transferred employees from that team, including Johnson, into different departments. (Maxwell Dep., R. 40-4, Page ID # 579; Johnson Dep., R. 35-2, Page ID # 204-205; Spreadsheet, R. 44-2, Page ID # 710.)

In December 2019, Johnson had a conversation with Heather Spencer, Vice President of Configuration, and Mary Piecuch, Vice President of Implementation, during which they offered Johnson the opportunity to join the Configuration Team as an analyst. (Johnson Dep., R. 35-2, Page ID # 204-205; Kambic Dep., R. 40-3, Page ID # 517.) Johnson's job responsibilities in this new role would be similar to her responsibilities in her previous role. (Johnson Dep., R. 35-2, Page ID # 206.) Although it has no bearing on the questions before the court, contrary to Johnson's assertion, the new role did not involve a pay increase. (Johnson Dep., R. 35-2, Page ID # 206.)[1] Johnson agreed to the transfer. (Email, R. 40-5, Page ID # 632-633; Email, R. 40-7, Page ID # 635.)

Johnson did not immediately transition to the new position. Instead, Johnson continued working as a Reimbursement Analyst under Maxwell's direction to "clear out" some the team's work, while reporting

---

[1] Johnson claimed that Spencer and Piecuch told her that she would receive a pay increase in the new job, but did not say how much. (Johnson Dep., R. 35-2, Page ID # 206.) But Evolent's pay data reflects no pay increase and Riley testified that the position change did not include a pay increase. (Spreadsheet, R. 40-8, Page ID # 636; Riley Decl., R. 35-7, Page ID # 279.)

to her new supervisor on the Configuration Team, Marie Lindauer, for "manager issues," such as time-off requests. (Johnson Dep., R. 35-2, Page ID # 208-212, 230-235.)

### 3. *Evolent plans a reduction in its workforce.*

In early 2020, Evolent planned to reduce its workforce in the Evolent Health Services business unit in an effort to reduce overall operating costs. (Ventimiglia Decl., R. 35-8, Page ID # 367.)

Company leadership, in conjunction with Vice President of Talent Management Richard Ventimiglia, decided that all low performers—defined as any employee with a two or lower on his or her 2019 Year End Performance Review—would be considered for the workforce reduction. (Riley Decl., R. 35-7, Page ID # 280, 284; Ventimiglia Decl., R. 35-8, Page ID # 367.) On February 7, 2020, Talent Partner Director Kelly Riley created an Excel spreadsheet listing all low-performing employees eligible to be terminated (the "RIF List"). (Riley Decl., R. 35-7, Page ID # 280; Spreadsheet, R. 44-5, Page ID # 785.)

The initial RIF List included 67 low-performing employees, including Johnson. (Riley Decl., R. 35-7, Page ID # 280; Spreadsheet, R. 44-5, Page ID # 785.) All but one employee on the list had, like Johnson,

8

received a score of two out of five on the 2019 Year End Performance Review.  (Email, R. 35-7, Page ID # 284; Spreadsheet, R. 44-5, Page ID # 785.)  The last employee on the list had received a score of one.  (Email, R. 35-7, Page ID # 284; Spreadsheet, R. 44-5, Page ID # 785.)  Evolent added no one to the RIF list after its initial compilation.

Over the next couple of weeks, Evolent narrowed the list to the final termination list.  Riley first sent the spreadsheet to the leaders of the various departments to ask whether they had any concerns about eliminating the positions of employees on the list.  (Riley Decl., R. 35-7, Page ID # 280.)  If a department leader had any concerns or feedback about a particular employee or position, Riley inserted it in the "Notes" column of the spreadsheet.  (Riley Decl., R. 35-7, Page ID # 280.)  Heather Spencer, Vice President of Configuration, reviewed the list for the Configuration Team.  (Riley Decl., R. 35-7, Page ID # 280.)  Spencer did not provide any feedback or concerns about Johnson's potential termination.  (Riley Decl., R. 35-7, Page ID # 280.)

After receiving department leader input, on February 10, 2020, Ventimiglia emailed a modified version of the RIF List—including the department leader feedback and a column indicating whether the

department leader was comfortable with terminating the position—to Melissa Gilliland, Senior Director of Talent Solutions, and Patrick Devlin, Vice President of Talent, for their review. (Email, R. 35-7, Page ID # 284-324.) The next day, Ventimiglia sent the list to Scott Fad, Senior Vice President of Product Healthplan Operations, for his review. (Email, R. 35-7, Page ID # 326.) And two days later, on February 13, Ventimiglia sent the list back to Gilliland. (Ventimiglia Decl., R. 35-8, Page ID # 367; Email, R. 35-8, Page ID # 375.)

Finally, on February 21, 2020, Riley finalized the list for termination of 33 low-performing employees. (Spreadsheet, R. 44-6, Page ID # 789.) Johnson was on the list at every step in this process, and was included in the final list. (Riley Decl., R. 35-7, Page ID # 280-281; Spreadsheet, R. 35-7, Page ID # 289-324; Ventimiglia Decl., R. 35-8, Page ID # 367; Spreadsheet, R. 35-8, Page ID # 377-397.)

> 4.   *Johnson informs Lindauer and Waiters of her pregnancy.*

Meanwhile, on February 14, 2020, Johnson submitted a request for personal time off on February 20 and March 20. (Email, R. 35-2, Page ID # 235.) The same day, Johnson's new Configuration Team direct supervisor, Lindauer, called Johnson to introduce herself, welcome

Johnson to the Configuration Team, and discuss the time-off request. (Johnson Dep., R. 35-2, Page ID # 212; Email, R. 35-2, Page ID # 233-235; Lindauer Dep., R. 35-4, Page ID # 258.)

During the call, Johnson informed Lindauer that she was pregnant and explained that was the reason for her time-off request. (Johnson Dep., R. 35-2, Page ID # 212-213.) Lindauer directed Johnson to contact the human resources department to discuss FMLA leave. (Johnson Dep., R. 35-2, Page ID # 212-213; Lindauer Dep., R. 35-4, Page ID # 259-260.) Lindauer did not herself disclose to anyone at Evolent that Johnson was pregnant. (Johnson Dep., R. 35-2, Page ID # 212-213; Lindauer Dep., R. 35-4, Page ID # 259-260.)

Following the call, Johnson emailed Evolent's human-resources general inbox, requesting information about maternity and FMLA leave. (Email, R. 35-2, Page ID # 240-241.) Emails to the human-resources general inbox are received and reviewed by the Human Resources Operations ("HR Ops") team, which sends out the emails to different departments. (Waiters Dep., R. 40-2, Page ID # 484-485.) Although Vice President of Talent Patrick Devlin also has access to the inbox, there is no evidence that Devlin actively monitors the inbox—and he submitted a

11

sworn declaration that he did not see any email from Johnson to the human-resources inbox in February 2020.  (Devlin Decl., R. 50-1, Page ID # 927.)  Instead, because Johnson's email related to a leave of absence, HR Ops sent it to the queue for Benefits Specialist Jennifer Waiters, so that she or her manager, Kristine Dubois, could respond to it.  (Waiters Dep., R. 40-2, Page ID # 462, 484.)  Waiters responded the same day, informing Johnson that she would send paperwork about maternity leave and asking Johnson for her due date.  (Email, R. 35-2, Page ID # 240-241.)

Johnson responded four days later, on February 18, informing Waiters that she was having twins and was due in August.  (Email, R. 35-2, Page ID # 239.)  Waiters promptly provided information about maternity leave and FMLA leave (Email, R. 35-2, Page ID # 237-239), and added Johnson to a spreadsheet Waiters used to track the status of all Evolent employees who had requested maternity leave (the "Maternity Tracking Spreadsheet").  (Waiters Dep., R. 40-2, Page ID # 488-489; Spreadsheet, R. 44-3, Page ID # 712.)  Access to the Maternity Tracking Spreadsheet was limited to three people at Evolent:  Waiters;

her supervisor, Dubois; and Senior Director of Talent Mara Jaffa. (Waiters Dep., R. 40-2, Page ID # 489-490.)

Importantly, Waiters did not speak with anyone about Johnson's pregnancy or inquiry about FMLA leave (Waiters Dep., R. 35-5, Page ID # 266), and was not herself involved in making any decisions about the workforce reduction. (Waiters Dep., R. 35-5, Page ID # 266.)

5.    *Evolent terminates Johnson as part of the reduction in force.*

On Friday, February 21, 2020, Riley created a notification schedule for individuals on the final RIF List about their termination. (Spreadsheet, R. 44-6, Page ID # 789; Riley Decl., R. 35-7, Page ID # 281.) On the same day, Maxwell sent Johnson an invitation for a telephonic meeting for the following Monday, February 24. (Johnson Dep., R. 35-2, Page ID # 217.)

During the February 24 meeting, Maxwell and Cindy Hargett, Associate Director of Talent Management, informed Johnson that Evolent had eliminated her new position and that Johnson's employment was being terminated. (Johnson Dep., R. 35-2, Page ID # 218; Hargett Dep., R. 53-1, Page ID # 1002.) At that time, Johnson informed Maxwell

and Hargett for the first time that she was pregnant.  (Johnson Dep., R. 35-2, Page ID # 219-220.)

Johnson would later confirm that, before informing Maxwell and Hargett of her pregnancy, she did not tell anyone at Evolent other than Lindauer and Waiters about her pregnancy or intention to take FMLA leave.  (Johnson Dep., R. 35-2, Page ID # 221-222.)  And before Johnson's termination, neither Maxwell, Hargett, Ventimiglia, Riley, Devlin, nor anyone else involved in the workforce reduction obtained knowledge of Johnson's pregnancy through any other means.  (Riley Decl., R. 35-7, Page ID # 281; Ventimiglia Decl., R. 35-8, Page ID # 367; Devlin Decl. R. 50-1, Page ID # 927-928; Hargett Dep., R. 35-6, Page ID # 276; Maxwell Dep., R. 40-4, Page ID # 611-612.)

Following Johnson's termination in February 2020, Evolent did not hire anyone to replace her nor did it hire any Configuration Analysts in the United States until 2021.  (Ventimiglia Decl., R. 35-8, Page ID # 367.)

### B.   Procedural History

1.   Johnson initiated this action in state court in July 2020, alleging that, by terminating her, Evolent discriminated against her on the basis of her pregnancy, retaliated against her for requesting FMLA

14

leave, and interfered with the exercise of her FMLA rights. (Complaint, R. 1-1, Page ID # 6-12.)   Johnson asserted a claim for pregnancy discrimination under the Kentucky Civil Rights Act, Ky. Rev. Stat. §§ 344.030(8)(a), 344.040(1)(a); and claims for retaliation and interference under the FMLA, 29 U.S.C. § 2611. (Complaint, R. 1-1, Page ID # 6-12.) Evolent removed the case to federal court based on federal question jurisdiction under 28 U.S.C. § 1331. (Notice of Removal, R. 1, Page ID # 1-5.)

Following discovery, Evolent moved for summary judgment. (Motion, R. 35, Page ID # 159-160; Memorandum, R. 35-1, Page ID # 162-175.) Johnson opposed the motion and filed a motion to strike portions of Evolent's exhibits, including a declaration from Evolent's counsel explaining the "last modified" date on several exhibits, and a declaration from Riley, explaining the RIF process.[2] (Motion, R. 39, Page ID # 409-410.)   While Evolent's motion for summary judgment was pending, Johnson also sought leave to file a supplemental response to the motion for summary judgment to address information concerning Waiter's

_____

[2] Johnson also moved to redact her birthdate in one of the exhibits, which Evolent did not oppose and the district court granted. (Motion, R. 39, Page ID # 409; Order, R. 57, Page ID # 1353.)

maternity tracking spreadsheet that the district court had compelled Evolent to produce in the interim.  (Motion, R. 55, Page ID # 1293-1294.)

2.    The district court granted summary judgment to Evolent on all claims, denied the motion to strike as moot, and entered final judgment for Evolent.  (Order, R. 57, Page ID # 1349.)

a.    On the pregnancy-discrimination claim, the court first found that Johnson had failed to establish a *prima facie* case of discrimination. The court explained that to establish a *prima facie* case of discrimination under Kentucky law, Johnson had to establish a "nexus between her pregnancy and [an] adverse employment action."  (Order, R. 57, Page ID # 1355 (citation omitted).)  To establish such a nexus, she had to demonstrate that "the individuals who made the decision to discharge her 'had knowledge of her pregnancy when the decision . . . was made.'" (Order, R. 57, Page ID # 1356 (quoting *Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438, 443 (6th Cir. 2002).)  And the court found that Johnson had failed to show that anyone "who actually participated in the RIF process knew about [Johnson's] pregnancy when she was terminated." (Order, R. 57, Page ID # 1356.)

The district court rejected Johnson's argument under a cat's paw theory that Vice President of Talent Devlin could have caused someone else to terminate Johnson for discriminatory reasons.   The court explained that a cat's paw theory of discrimination describes "a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action."   (Order, R. 57, Page ID # 1357 (quoting *Marshall v. Rawlings Co.*, 854 F.3d 368, 377 (6th Cir. 2017).) The court rejected the theory "for several reasons"—namely, that Johnson had (1) failed to provide any evidence that Devlin actually knew of her pregnancy; (2) failed to provide any evidence that Devlin influenced the decision to terminate Johnson; and (3) failed to show, "or even allege," that Devlin had "the requisite discriminatory animus" to support the theory.   (Order, R. 57, Page ID # 1357.)

The district court also reasoned that, even if Johnson had made a *prima facie* case of pregnancy discrimination, Evolent had provided a legitimate, nondiscriminatory reason for her termination—the workforce reduction and her negative performance evaluations—that Johnson could not demonstrate was pretextual.   (Order, R. 57, Page ID # 1356-

1361.)  The court noted the "undisputed" facts that Johnson had received a score of two on her 2019 performance review and that all employees who received a two or lower on their 2019 performance reviews were included on the initial RIF list.  (Order, R. 57, Page ID # 1358.)  Although Johnson asserted that her transfer demonstrated that "she had been succeeding," the court explained that the record actually demonstrates that the transfer was based on a company reorganization.  (Order, R. 57, Page ID # 1359.)

Although Johnson relied on the lack of notes in her row of the RIF spreadsheet and a purported need to backfill her position to suggest that Evolent must have kept her on the final list based on her pregnancy, the court pointed out that the same was true of at least one other terminated employee, that not all comments in the spreadsheet supported termination, and that not all employees with comments were terminated. (Order, R. 57, Page ID # 1359.)  The court further determined that the mere "temporal proximity" of Johnson's termination and the disclosure of her pregnancy was insufficient to create a genuine dispute as to pretext.  (Order, R. 57, Page ID # 1360.)  The court also concluded that

Johnson's "proffered statistical evidence" likewise "fail[ed] to establish pretext." (Order, R. 57, Page ID # 1361.)

b.     The district court rejected Johnson's FMLA interference and retaliation claims on similar grounds. Specifically, the court reasoned that "[e]ven assuming that Johnson could establish a prima facie case of interference or retaliation," she "failed to demonstrate a genuine issue of material fact as to whether Evolent's proffered reason for her termination was pretextual." (Order, R. 57, Page ID # 1362-1363.) Johnson offered in support of her FMLA claims all of the same arguments for why Evolent's proffered legitimate, nondiscriminatory reasons were pretextual as she offered for her state-law claim. And the district court rejected them all for the same reasons. (Order, R. 57, Page ID # 1362-1363.)

c.     Finally, the district court denied Johnson's motion to strike the declarations in support of Evolent's motion for summary judgment as moot "[b]ecause the Court [did] not rely on or refer to the challenged portions of the[] declarations" in resolving Evolent's motion. (Order, R. 57, Page ID # 1353-1354.)

19

## SUMMARY OF ARGUMENT

I.  The district court properly granted summary judgment for Evolent on Johnson's claim of pregnancy discrimination under the Kentucky Civil Rights Act ("KCRA").  Under Kentucky law, claims under the KCRA are governed by the same burden-shifting framework that governs claims under similar antidiscrimination federal statutes, articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See Spees v. James Marine, Inc.*, 617 F.3d 380, 389 (6th Cir. 2010) (citing *Ammerman v. Bd. of Educ.*, 30 S.W.3d 793, 797-98 (Ky. 2000)).

Applying that framework, the district court properly concluded that Johnson did not establish a *prima facie* case of discrimination because she offered no evidence establishing a nexus between her termination and pregnancy.  The only two individuals who knew of her pregnancy had no involvement in the workforce reduction.  In the absence of knowledge by someone involved in the process, Johnson cannot make a *prima facie* case under a direct or cat's paw theory.

Even assuming Johnson had established a *prima facie* case, the district court also properly concluded that Evolent presented a legitimate, nondiscriminatory reason for her termination—a workforce

reduction and poor performance—and that Johnson did not establish that Evolent's reason was pretext. The only non-speculative evidence of pretext that Johnson presented was temporal proximity, which is insufficient under Sixth Circuit precedent.

II. Johnson's FMLA interference and retaliation claims fail for essentially the same reasons. Johnson cannot establish a *prima facie* case of FMLA interference or retaliation because she lacks evidence to establish that any decisionmaker knew she was exercising her rights under the FMLA. Absent such knowledge, she cannot establish that Evolent took action against her to prevent her from exercising her rights under the FMLA, or that there was a causal connection between the protected FMLA activity and her termination. Moreover, even assuming she had established a *prima facie* case of FMLA retaliation or interference, the district court properly dismissed her claims because Evolent presented legitimate, non-retaliatory reasons for her termination and Johnson lacked evidence that Evolent's reason was pretext.

III. Finally, because the district court denied each of Johnson's claims without relying on the challenged declarations, the district court

properly denied Johnson's motion to strike those declarations as moot. Because this Court can affirm without relying on those declarations, it should affirm that ruling as well.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *See Superior Production P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 325 (6th Cir. 2015). "Summary judgment is appropriate where the evidence on record shows no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* at 326 (citing Fed. R. Civ. P. 56(a), (c)). A dispute is genuine only if there exists concrete evidence that would permit a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court "grant[s] all reasonable inferences in favor of the non-moving party," "'the mere existence of a scintilla of evidence in support of [that] position will be insufficient' to defeat summary judgment." *Superior Production*, 784 F.3d at 326 (quoting *Anderson*, 477 U.S. at 252) (brackets omitted).

This Court reviews the denial of a motion to strike or redact a declaration "under the highly deferential abuse-of-discretion standard."

*Baker Hughes Inc. v. S&S Chemical, LLC*, 836 F.3d 554, 560 (6th Cir. 2016). "An abuse of discretion occurs if the District Court 'relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment.'" *Id.*

## ARGUMENT

The district court correctly granted Evolent summary judgment on each of Johnson's claims. Each claim is governed by the same *McDonnell Douglas* burden-shifting framework that requires a plaintiff first to make a *prima facie* showing of discrimination and then to demonstrate that any legitimate, nondiscriminatory explanation proffered by the defendant for an adverse employment action is pretextual. Johnson has failed to make a *prima facie* case that her termination was based on her pregnancy or her request to take FMLA leave. And even if she could make such a showing, she has failed to offer sufficient evidence from which a jury could find that Evolent's legitimate, nondiscriminatory reasons for her termination—poor performance and a workforce reduction—were pretextual. Because the district court reached that determination (and this Court can affirm) without relying on the

challenged declarations, the district court also correctly denied the motion to strike as moot. The district court's judgment should therefore be affirmed.

## I.    The District Court Correctly Granted Evolent Summary Judgment on Johnson's Pregnancy-Discrimination Claim.

The district court correctly granted summary judgment to Evolent on Johnson's pregnancy-discrimination claim under Kentucky law. The KCRA prohibits employers from taking adverse employment actions on the basis of an employee's sex, which includes pregnancy. *See* Ky. Rev. Stat. §§ 344.030(8)(a), 344.040(1)(a). Where, as here, a plaintiff offers no direct evidence of discriminatory intent, Kentucky courts apply the same standards as applied under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, including the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ammerman*, 30 S.W.3d at 797-98 ("The Kentucky Act is similar to Title VII . . . and should be interpreted consistently with federal law.").

Under that framework, to state a *prima facie* case of pregnancy discrimination, a plaintiff must demonstrate that: (1) she was pregnant; (2) she was qualified for her job; (3) she was subjected to an adverse employment decision; and (4) there is a nexus between her pregnancy

24

and the adverse employment action.  *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000).  If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action.  *Id.*  If the defendant proffers such a reason, the burden shifts back to the employee to show that the proffered reason is merely pretext for intentional discrimination.  *Id.*

Johnson cannot make a *prima facie* case of pregnancy discrimination because there was no nexus between her pregnancy and her termination.  And, even if she could make a *prima facie* case, she cannot show that Evolent's legitimate, nondiscriminatory reason for terminating Johnson was pretext for an intentional discrimination.

**A.  Johnson Cannot Establish a *Prima Facie* Case of Pregnancy Discrimination Because There Was no Nexus Between her Pregnancy and Termination.**

1.  To demonstrate the required nexus to make a *prima facie* case, a plaintiff must show that the individuals who made the decision to terminate her employment "had knowledge of her pregnancy when the decision . . . was made." *Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438, 443 (6th Cir. 2002).  As the district court noted, the record is devoid

25

of any evidence that any individual who participated in the workforce reduction, and the decision to terminate Johnson, knew about Johnson's pregnancy when she was terminated.

Maxwell, Hargett, Ventimiglia, Riley, and Devlin all testified they did not have any knowledge of Johnson's pregnancy before her termination. (Riley Decl., R. 35-7, Page ID # 281; Ventimiglia Decl., R. 35-8, Page ID # 367; Devlin Decl. R. 50-1, Page ID # 927-928; Hargett Dep., R. 35-6, Page ID # 276; Maxwell Dep., R. 40-4, Page ID # 611-612.) Johnson failed to offer any evidence refuting those assertions or showing that anyone else involved in the termination decision or RIF process knew she was pregnant. Instead, the record demonstrates that only two individuals (Lindauer and Waiters) knew Johnson was pregnant at the time of Johnson's termination, and neither participated in the workforce reduction. (Lindauer Dep., R. 35-4, Page ID # 259-260; Waiters Dep., R. 35-5, Page ID # 266.)

Because Johnson offered no evidence that any decisionmaker knew about her pregnancy at the time of her termination, she cannot establish a nexus between her pregnancy and termination, and thus cannot carry her burden to present a *prima facie* case. *See Prebilich-Holland*, 297 F.3d

26

at 444 (upholding summary judgment when plaintiff had no evidence to support an inference that the decisionmaker had knowledge of her pregnancy).

2.    On appeal, Johnson suggests that she satified the nexus requirement by establishing that, by the time of her termination, "the human resources department had unquestionably been alerted to [her] pregnancy" and "Devlin and Gilliland, who had access to the HR email inbox, were involved in selecting the final employees [from the initial RIF List] to be terminated." (Opening Br. 26.) She further asserts that, even if Devlin and Gilliland were not the decisionmakers for her termination, a reasonable jury could find that they "shaped the judgment of the decisionmakers" and thus find a *prima facie* case under a "cat's paw theory." *Id.* at 28-29. Both theories fail.

As an initial matter, Johnson never argued in the district court that Gilliland had knowledge of Johnson's pregnancy before Johnson's termination. As a result, that argument is forfeited and Johnson cannot raise it for the first time on appeal. *See City of Columbus, Ohio v. Hotels.com, L.P.*, 693 F.3d 642, 652 (6th Cir. 2012) ("Generally, 'an argument not raised before the district court is waived on appeal to this

Court.'" (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)).  Johnson provides no basis for disregarding her forfeiture.

In any event, neither Devlin nor Gilliland had any knowledge of Johnson's pregnancy at the time the decision was made—and so cannot aid Johnson in making a *prima facie* case on a direct or cat's paw theory. "To survive a summary judgment motion, a plaintiff must put forward more than speculations or intuitions." *Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007); *see Clemente v. Vaslo*, 679 F.3d 482, 495 (6th Cir. 2012) ("'[M]ere speculation, conjecture, or fantasy' [is] insufficient to survive a motion for summary judgment."); *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) ("[C]onclusory and unsupported allegations, rooted in speculation, do not meet th[e] burden" of the *prima facie* case).

Johnson offers nothing but speculation that either Devlin or Gilliland were actively monitoring the general human-resource email inbox.  She fails to refute Devlin's testimony that, in fact, he did not see any email from Johnson to the human-resources inbox in February 2020. (Devlin Decl., R. 50-1, Page ID # 927.)  If anything, the fact that Waiters, a Benefits Specialist, responded almost immediately to Johnson's inquiry

about FMLA leave only underscores that testimony, eliminating the more obvious reason that Devlin, Gilliland, or anyone else in leadership would need to get involved in answering or directing Johnson's inquiry. (Email, R. 35-2, Page ID # 240-241; Waiters Dep., R. 40-2, Page ID # 462.) And it is undisputed that neither Devlin nor Gilliland had access to Waiters' maternity tracking spreadsheet. (Devlin Decl. R. 50-1, Page ID # 927-928; Waiters Dep., R. 40-2, Page ID # 489-490.) Because Johnson has no evidence that Devlin nor Gilliland actually had knowledge of Johnson's pregnancy, but relies solely on pure speculation, the district court correctly determined that Johnson could not make a *prima facie* case of pregnancy discrimination under either a direct or cat's paw theory.

Finally, Johnson's cat's paw theory fails for at least one more reason. As the district court recognized, the cat's paw theory of discrimination "refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Marshall v. Rawlings Co.*, 854 F.3d 368, 377 (6th Cir. 2017). The theory permits a court to impute the discriminatory animus of subordinates to formal decisionmakers. *See id.* "As a predicate to cat's paw," a plaintiff

must therefore "establish that the record supports discriminatory animus" on the part of the subordinate.  *Voltz v. Erie Cnty.*, 617 F. App'x 417, 424-25 (6th Cir. 2015) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011)).  Here, "Johnson has failed to demonstrate, or even allege, the requisite discriminatory animus to satisfy the cat's paw theory of liability."  (Order, R. 57, Page ID # 1357.)  Even if Devlin or Gilliland knew of Johnson's pregnancy and even if they were involved in determining who would be terminated, the record is devoid of any evidence or allegation that Devlin and Gilliland acted on basis of "prejudice, spite, or ill will."  *Voltz*, 617 F. App'x at 425.[3]

### B.  Even if Johnson Could Establish a *Prima Facie* Case, She Cannot Establish that Evolent's Legitimate Reasons for Her Termination Are Pretext.

Even if Johnson could make a *prima facie* case of pregnancy discrimination, she does not challenge that Evolent set forth legitimate, non-discriminatory reasons for her termination—namely, poor

---

[3] Johnson claims that Evolent offered shifting explanations regarding the decisionmaker in Johnson's termination. (Opening Br. 17-19.)  But as explained, the RIF process involved multiple stakeholders and decisionmakers. *See* pp. 8-10, *supra*.  The salient point here is that the absence of any overlap between the individuals involved in the workforce reduction and the individuals who knew about Johnson's pregnancy forecloses a *prima facie* case.

performance and a workforce reduction. To prevail on her pregnancy discrimination claim, she therefore must establish that Evolent's reasons were pretextual. In order to establish pretext, a plaintiff must establish that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *O'Donnell v. City of Cleveland*, 838 F.3d 718, 728-29 (6th Cir. 2016). Johnson can show none of these.

The workforce reduction and Johnson's poor performance both plainly have a basis in fact. Johnson does not contest that the reduction actually occurred or that it was necessary. She does not deny that she received a rating of two out of five on both her 2018 and 2019 performance reviews. And she does not contest that all individuals who received a two or below rating on the 2019 reviews were considered for the workforce reduction.

Johnson similarly cannot establish that her poor performance did not actually motivate her inclusion in the workforce reduction or that it was insufficient to warrant her termination. Johnson claims she has shown pretext because (1) only half of the individuals on the initial list were actually terminated; (2) no reasons were provided in the "notes"

31

section for the spreadsheets to support Johnson's termination; (3) it was noted that the position would be backfilled with a United States worker; (4) she was transferred to a new department; (5) she was not on an improvement plan; and (6) Evolent did ultimately have to replace her with new analysts. (Opening Br. 31-32.) Those reasons are unpersuasive.

The fact that not all employees on the initial list were terminated is not evidence of pretext without some indication that pregnant employees were disproportionately kept on it. *See, e.g.*, *Douglas v. Eaton Corp.*, 577 F. App'x 520, 525 (6th Cir. 2014) (finding the undisputed fact that employer also terminated similarly situated employees "dispels any possible inference of discrimination created by the comparison"). Johnson offers virtually no evidence about the employees who were removed from the list, and the evidence shows that similarly situated employees outside the protected class were included in the workforce reduction and treated the same as Johnson. (Spreadsheet, R. 44-6, Page ID # 789.)

The lack of comments in the "notes" section also is not evidence of pregnancy discrimination. As the district court noted, there was at least

32

one other employee who had no notes, was not on leave or pregnant, and was terminated in the workforce reduction. (Spreadsheet, R. 44-4, Page ID # 769; Spreadsheet, R. 44-6, Page ID # 789.) In any event, the notes did not necessarily provide a reason for keeping the employee on the final list of terminated employees. Rather, the notes provided additional context to whether *or not* the reviewer was comfortable with terminating the employee. (Spreadsheet, R. 44-4, Page ID # 769; Spreadsheet, R. 35-8, Page ID # 397 (noting that employee on initial RIF List was "showing improvement. No cut").)

While it is true that the RIF List stated that Johnson's position was to be backfilled with a United States worker, there was at least one other employee who was neither pregnant nor on leave who was also listed as having a position that was to be backfilled with a United States worker. (Spreadsheet, R. 44-4, Page ID # 769; Spreadsheet, R. 44-6, Page ID # 789.) Moreover, contrary to Johnson's assertion, the undisputed evidence shows that Evolent did not, in fact, hire immediately anyone to replace Johnson. (Ventimiglia Decl., R. 35-8, Page ID # 367.) While Evolent did eventually hire additional Configuration Analysts in the United States,

it did not do so until 2021—almost a full year after the reduction in force. (Ventimiglia Decl., R. 35-8, Page ID # 367.)

Johnson's remaining arguments are likewise unavailing. While Johnson claims "she had been succeeding enough to get a transfer to a new department" (Opening Br. 32), the evidence shows that Johnson was transferred as part of a company reorganization and her performance had no bearing on the transfer. (Johnson Dep., R. 35-2, Page ID # 206; Maxwell Dep., R. 40-4, Page ID # 579.) And being on a formal performance improvement plan was not a criteria for placement on the RIF List or ultimately being terminated; other non-pregnant employees who were not on performance improvement plans were also discharged. (Spreadsheet, R. 44-4, Page ID # 769; Spreadsheet, R. 44-6, Page ID # 789.) Moreover, Maxwell testified that she had been considering placing Johnson on a performance improvement plan leading up to her transfer. (Johnson Dep., R. 35-2, Page ID # 203-204, 224-228; Maxwell Dep., R. 35-3, Page ID # 247-248; Maxwell Dep., R. 40-4, Page ID # 592-593.)

In the end, the only evidence Johnson has to support her allegation of pretext is temporal proximity. Consistent with this Court's well-established precedent, the district court found that proximity to be

34

"insufficient to establish pretext."  (Order, R. 57, Page ID # 1360); *see*

*Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012) ("[T]he law in

this circuit is clear that temporal proximity cannot be the sole basis for

finding pretext."); *see also Bailey v. Oakwood Healthcare, Inc.*, 732 F.

App'x 360, 362, 365 (6th Cir. 2018) (citing *Megivern v. Glacier Hills Inc.*,

519 F. App'x 385, 398-401 (6th Cir. 2013)).  This Court should do the

same.

## C.     Johnson Cannot Save Her Claim with the Proffered Pattern-and-Practice Evidence.

Johnson cannot save her claim by relying on supposed "pattern-or-

practice" evidence of Evolent "terminating employees after they disclose

pregnancies."  (Opening Br. 29.)  The "pattern-or-practice method of

proving discrimination is not available to individual plaintiffs." *Bacon v.*

*Honda of America Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004).  "[A]

pattern-or-practice claim," like that advanced in *International*

*Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), "is

focused on establishing a *policy* of discrimination."  *Bacon*, 370 F.3d at

575 (emphasis added).  "[B]ecause it does not address individual

[employment] decisions, it is inappropriate as a vehicle for proving

discrimination in an individual case."  *Id.*; *see Williams v. Dearborn*

*Motors 1, LLC*, No. 20-1351, 2021 WL 3854805, at *5 (6th Cir. Aug. 30, 2021) ("The pattern-or-practice method is available only in class actions or suits by the government."); *e.g.*, *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012) (class action).

Accordingly, while pattern-or-practice evidence "may be relevant to proving an *otherwise-viable* individual claim for disparate treatment," *Bacon*, 370 F.3d at 575 (emphasis added), an individual plaintiff "must still satisfy the *McDonnell Douglas* framework," not only the *Teamster* framework, "in order to prevail." *Williams*, 2021 WL 3854805, at *6. Because Johnson does not have an "otherwise-viable" claim under the *McDonnell Douglas* framework, the proferred pattern-or-practice evidence is insufficient to carry her burden.

In any event, the proferred "statistics" are not evidence of any pattern-or-practice of discrimination by Evolent. Even where appropriately considered, "statistical data showing an employer's pattern of conduct toward a protected class as a group" can create an inference of discrimination against individual members of the class only where the statistics "show a significant disparity" in adverse treatment and the plaintiffs "eliminate the most common nondiscriminatory explanations

for the disparity." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990). This Court has "cautioned that 'courts must be careful to evaluate the proffered statistical analyses in light of the total circumstances present in a given case' because '[i]ncomplete or inapplicable analyses, simplistic percentage comparisons, and small sample sizes produce statistical analyses with little probative value.'" *Diebel v. L & H Resources, LLC*, 492 F. App'x 523, 532 (6th Cir. 2012). "Even greater caution is warranted when general statistics are used to show that age caused the result in the case of one individual." *Id.*

Here, Johnson's "statistical data" does not create an inference of discrimination. Johnson claims to have identified 48 instances in which Evolent employees who disclosed pregnancies and requested FMLA leave were terminated based on timing that she characterizes as "suspicious" and "likely-discriminatory." (Opening Br. 15, 30.) But her calculation is misleading. Rather than considering the time between the date of notification and termination, Johnson lumps together any instance when an employee was terminated between when she provided notice of her pregnancy and *intent* to take leave and six months after *returning* from the FMLA leave. (Opening Br. 15.) So, for example, Johnson flags E52

37

as suspicious because she "was terminated four days before her anticipated return from leave." *Id.* But E52 obviously provided notice of her pregnancy and requested leave well before the end of her leave—indeed, about eight-and-a-half months before. (Spreadsheet, R. 58-2, Page ID # 1374-1399; Spreadsheet, R. 58-3, Page ID # 1400-1414.) There is nothing inherently "suspicious" about terminating an employee three-quarters-of-a-year after being notified of the relevant information. *See Cooper v. City of North Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986) (in the retaliation context holding "the mere fact that [plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an interference of retaliation").

Of the 486 employees who notified Evolent of their pregnancy, only seven were terminated within three months of when they first provided notice of their prgenancies and intent to take leave (E124, E155, E174, E334, E350, and E374). (Spreadsheet, R. 58-2, Page ID # 1374-1399; Spreadsheet, R. 58-3, Page ID # 1400-1414.) Only 21 were terminated within six months of notification (E10, E21, E45, E53, E68, E78, E111, E153, E161, E162, E240, E292, E356, E360). (Spreadsheet, R. 58-2, Page ID # 1374-1399; Spreadsheet, R. 58-3, Page ID # 1400-1414.)

38

Johnson's "evidence" also fails to create any inference of discrimination because it is entirely divorced of context. *See, e.g.*, *Teamsters*, 431 U.S. at 338 (explaining that the government "*bolstered its statistical evidence with the testimony of individuals* who recounted over 40 specific instances of discrimination" (emphasis added)). Johnson provides no other evidence about the circumstances of any other termination. She does not, for example, provide the stated reasons for termination—much less demonstate that those reasons were invalid. Indeed, she does not even try to eliminate the most common nondiscriminatory explanations for terminations (such as poor performance). She does not compare the termination rate—either her proferred rate or the actual one—with the termination rate of any other Evolent employees who were similarly situated (other than the pregnancy). She offers no evidence that the employees held the same or similar positions as Johnson, or were even in the same department as Johnson. And she offers no evidence that anyone involved in the RIF during which Johnson was terminated knew of the other decisions.

In short, Johnson provides no context or information about the other instances in which employees were eliminated, and certainly does

not establish that they were in the same circumstances as Johnson. Even if the court could consider it, the information thus does not support Johnson's claim. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 532 (10th Cir. 1994) (finding plaintiff's "statistics are inappropriate for such an illustration [of disparity] because they are not based upon a comparative analysis of similarly situated individuals"); *Conner v. State Farm Mut. Auto. Ins. Co.*, 273 F. App'x 438, 442-43 (6th Cir. 2008) (finding plaintiff's "statistical analysis does little to support her position because (1) it fails to eliminate the most common nondiscriminatory explanations for the disparity, such as differences in skills or education, and (2) the analysis is not limited to … the primary decision-maker"); *Diebel*, 492 F. App'x at 532 (finding plaintiff's attempt to show pretext using statistics "undercut" because of his "[f]ailure to control for random chance or employee abilities"); *Megivern*, 519 F. App'x at 400-01 (finding pattern or practice evidence does not support plaintiff's claim when plaintiff identified three employees who "present[ed] factually distinct circumstances from [plaintiff's] case").

## II.    The District Court Properly Dismissed Johnson's FMLA Interference and Retaliation Claims.

The district court also correctly granted summary judgment to Evolent on Johnson's FMLA interference and retaliation claims. Like the pregnancy claim, those claims are properly considered under the *McDonnell Douglas* burden-shifting framework. *See Donald*, 667 F.3d at 762. Johnson cannot satisfy that framework for the FMLA claims for essentially the same reasons that she cannot carry her burden for the pregnancy discrimination claim.

Johnson cannot make a *prima facie* case for either type of FMLA claim because she cannot show that anyone involved in her termination— the conduct that purportedly interfered with her leave and retaliated against her intention to take it—knew that she had requested or taken FMLA leave. To establish a *prima facie* case of FMLA interference, an employee must show: (1) the FMLA applies to her and her employer; (2) the employee was entitled to FMLA leave; (3) the employee notified her employer that she intended to take the leave; (4) the employer wrongfully denied the employee the FMLA leave. *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006). To establish a *prima facie* case of FMLA retaliation, a plaintiff must show (1) she was engaged in an

41

activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an adverse action against her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *See Donald*, 667 F.3d at 761.

It is not enough for Johnson to demonstrate that someone at Evolent had notice or knowledge of her exercise of FMLA rights. Rather, she must present evidence that the decisionmakers involved in the interference or retaliation had such knowledge—"as one cannot retaliate against an employee for engaging in protected activity unless he knew the employee had done so." *Scott v. Eastman Chemical Co.*, 275 F. App'x 466, 482 (6th Cir. 2008); *see, e.g.*, *Slusher v. United States Postal Service*, 731 F. App'x 478, 480 (6th Cir. 2018); *Reitz v. Ford Motor Co.*, 2019 WL 4675387, at *11-12 (W.D. Ky. Sept. 25, 2019) ("The protected activity must be the impetus for the materially adverse action.").

The undisputed evidence shows that no one other than Waiters and Lindauer (who were not involved in the termination decision) had been notified or were aware that Johnson was exercising any protected FMLA

42

right prior to her termination.  Because no decisionmaker had notice or knowledge of any protected activity, they could not have taken an action against Johnson to interfere with her FMLA rights or to retaliate against her exercise of them.  Johnson's claim therefore fails on the first step of the *McDonnell Douglas* analysis.

Even assuming she could make a *prima facie* case for either FMLA claim, Johnson cannot establish that Evolent's legitimate, nondiscriminatory reasons for her termination were pretext for FMLA discrimination.  Johnson has no evidence to support that Evolent's legitimate nondiscriminatory and nonretaliatory reason of including her in the workforce reduction was pretextual for FMLA retaliation or interference.  Her reasons for finding pretext for pregnancy discrimination are equally unavailing here.  And her pattern-and-practice evidence is equally irrelevant and unpersuasive.

## III.  The Court Properly Denied Johnson's Motion To Strike or Redact.

Finally, the district court did not abuse its discretion in denying Johnson's motion to strike a declaration submitted by Evolent's counsel discussing when and by whom some of Evolent's Excel documents were "last modified" and a declaration submitted by Riley describing the RIF

43

process. (Motion, R. 39, Page ID 409-410; Riley Decl., R. 35-7, Page ID # 278-364; Weiss Decl., R. 35-9, Page ID # 398-400.) As the district court explained, it did not rely on either of the declarations in deciding Evolent's motion for summary judgment and Evolent has not relied on those declarations here. The motion to strike therefore was and is moot, and the district court correctly declined to grant it on that basis. *See Hamilton Cnty. Emergency Commc'ns Dist. v. Level 3 Commc'ns, LLC*, 845 F. App'x 376, 390 (6th Cir. 2021); *Reed v. City of Memphis*, 735 F. App'x 192, 198 (6th Cir. 2018); *Hicks v. Concorde Career College*, 449 F. App'x 484, 487 (6th Cir. 2011).

Contrary to Johnson's suggestion, Evolent's defense in this case does not turn on whether Riley was a decisionmaker in the workforce reduction process. (Opening Br. 35.) In fact, Evolent has never claimed that Riley was a decisionmaker in the process. (Riley Decl., R. 35-7, Page ID # 280 (explaining Riley's role in the RIF process); Resp. in Opp. to Motion, R. 51, Page ID # 933.) Instead, throughout the case, Evolent has noted only that Riley was *involved* in the RIF process—a fact not lost on Johnson or her counsel before Evolent offered the Riley declaration. (*See, e.g.*, Brief, R. 40, Page ID # 442 (identifying Riley as included on emails

44

produced during discovery); Fad Dep., R. 51-1, Page ID # 943-944
(counsel identifying Riley as the creator of the spreadsheets during the
RIF); Hargett Dep., R. 51-2, Page ID # 949-951 (same); Maxwell Dep., R.
51-3, Page ID # 956-957 (same).)

Moreover, although irrelevant to the issues before the Court,
Evolent complied with its disclosure obligations and any error was
harmless. Federal Rule of Civil Procedure 26(a)(1)(A) requires parties to
identify individuals "that the disclosing party may use to support its
claims or defenses" and Rule 26(e) requires parties to timely supplement
said disclosures "*if* the additional or corrective information has not
otherwise been made known to the other parties during the discovery
process or in writing." Fed. R. Civ. P. 26(a)(1)(A); Fed. R. Civ. P. 26(e)
(emphasis added). Because it was known throughout discovery that Riley
was involved with the RIF process and preparing the spreadsheets that
are the subject of her declaration, Evolent had no obligation to update its
disclosures. *See Baker Hughes*, 836 F.3d at 568 (holding that defendant
was not obligated to update disclosures because plaintiff had obtained
knowledge of witness and information throughout the course of

discovery).  And any purported untimely disclosure was harmless.  *See*

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

Finally, with respect to the declaration submitted by Evolent's counsel, the documents discussed were produced in discovery.  (Weiss Decl., R. 35-9, Page ID # 399-400.)  The declaration merely explained that, before producing those documents, an individual at Evolent's outside law firm inadvertently modified the "last modified" date on those documents.  (Weiss Decl., R. 35-9, Page ID # 399-400.)  Evolent's counsel submitted the declaration to explain the mistake.  (Weiss Decl., R. 35-9, Page ID # 399-400.)  Johnson does not identify any discovery obligation that Evolent violated through that inadvertent mistake and correction. And although Johnson asserts that she "asked deponents questions" about the last-modified date in depositions during discovery, the only relevance of the "last modified" dates went to whether Johnson was included on the RIF List prior to disclosing her pregnancy to Lindauer. Evolent offered evidence apart from the challenged declaration that she was.  (Riley Decl., R. 35-7, Page ID # 280-281; Ventimiglia Decl., R. 35-8, Page ID # 367.)  Thus, even if Johnson could identify a violation of Evolent's discovery obligations, any such violation was harmless.

46

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's orders granting summary judgment to Evolent and denying in part Johnson's motion to strike.

Dated: October 11, 2022            Respectfully submitted,

*/s/ Jonathan Y. Ellis*

Jonathan Y. Ellis
McGuireWoods LLP
501 Fayetteville Street
Suite 500
Raleigh, NC 27601
T: (919) 755-6688
F: (919) 755-6588
jellis@mcguirewoods.com

Michael R. Phillips
Melissa M. Weiss
McGuireWoods LLP
77 West Wacker Drive
Suite 4100
Chicago, IL 60601
T: (312) 750-8902
F: (312) 920-6181
mphillips@mcguirewoods.com
mweiss@mcguirewoods.com

*Counsel for Defendant-Appellee*
*Evolent Health LLC*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 9,019 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Century Schoolbook, 14-point font.

Dated: October 11, 2022              */s/ Jonathan Y. Ellis*
                                     Jonathan Y. Ellis

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2022, I electronically filed the foregoing brief with the Clerk of this Court using the appellate CM/ECF system, which will also serve counsel of record.

Dated: October 11, 2022                    */s/ Jonathan Y. Ellis*
                                           Jonathan Y. Ellis

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

## W.D. Ky. No. 3:20-cv-601

| Docket Number | Page ID | Description |
|---|---|---|
| R. 1 | 1-5 | Notice of Removal |
| R. 1-1 | 6-12 | Complaint |
| R. 35 | 159-161 | Defendant's Motion for Summary Judgment |
| R. 35-1 | 162-177 | Defendant's Memorandum in Support of Motion for Summary Judgment |
| R. 35-2 | 178-241 | Excerpts from the Deposition of Ericka Peacock Johnson |
| R. 35-3 | 242-252 | Excerpts from the Deposition of Clarice Maxwell |
| R. 35-4 | 253-260 | Excerpts from the Deposition of Marie Lindauer |
| R. 35-5 | 261-269 | Excerpts from the Deposition of Jennifer Waiters |
| R. 35-6 | 270-277 | Excerpts from the Deposition of Cindy Hargett |
| R. 35-7 | 278-364 | Declaration of Kelly Riley |
| R. 35-8 | 365-397 | Declaration of Richard Ventimiglia |
| R. 35-9 | 398-401 | Declaration of Melissa Weiss |
| R. 39 | 409-410 | Plaintiff's Motion to Strike Portions of Exhibits in Defendant's Motion for Summary Judgment |
| R. 40 | 436-454 | Plaintiff's Response to Defendant's Motion for Summary Judgment |
| R. 40-2 | 456-508 | Deposition of Jennifer Waiters |
| R. 40-3 | 509-569 | Deposition of Suzanne Kambic |
| R. 40-4 | 570-631 | Deposition of Clarice Maxwell |
| R. 40-5 | 632-633 | Emails between Peacock, Spencer, and Piecuch, Dec. 19, 2019-Jan. 2, 2020, PEACOCK_JOHNSON00090-91 |

| R. 40-7 | 635 | Email from Lawson to Peacock, Jan. 31, 2020, PEACOCK_JOHNSON000061 |
| R. 40-8 | 636 | Peacock-Johnson Payslips, Evolent_0041 |
| R. 44-2 | 710 | Spreadsheet, ConfidentialEvolent_0163 |
| R. 44-3 | 712 | Spreadsheet, ConfidentialEvolent_0171 |
| R. 44-4 | 769 | Spreadsheet, ConfidentialEvolent_0164 |
| R. 44-5 | 785 | Spreadsheet, ConfidentialEvolent_0167 |
| R. 44-6 | 789 | Spreadsheet, ConfidentialEvolent_0166 |
| R. 50-1 | 926-928 | Declaration of Patrick Devlin |
| R. 51 | 929-938 | Defendant's Response in Opposition to Plaintiff's Motion to Strike Portions of Exhibits in Defendant's Motion for Summary Judgment |
| R. 51-1 | 939-944 | Excerpts from the Deposition of Scott Fad |
| R. 51-2 | 945-951 | Excerpts from the Deposition of Cindy Hargett |
| R. 51-3 | 952-957 | Excerpts from the Deposition of Clarise Maxwell |
| R. 53-1 | 964-1037 | Deposition of Cindy Hargett |
| R. 55 | 1293-1294 | Plaintiff's Motion for Leave to File Supplemental Response to Defendant's Motion for Summary Judgment |
| R. 57 | 1349-1364 | Memorandum Opinion and Order |
| R. 58-2 | 1374-1399 | Defendant's Full Pregnancy Tracking Spreadsheet |
| R. 58-3 | 1400-1414 | Defendant's Termination Date and Reason Spreadsheet |
| R. 59 | 1415 | Judgment |
| R. 60 | 1480-1481 | Notice of Appeal |